565 A.2d 173

**AMERICAN ASSOCIATION OF MEAT PROCESSORS, Appellee,**

v.

**CASUALTY RECIPROCAL EXCHANGE, Appellant.**

Superior Court of Pennsylvania.

Argued March 28, 1989.

Filed Oct. 17, 1989.

William A.K. Titelman, Harrisburg, for appellant.

Linus E. Fenicle, Harrisburg, for appellee.

Before MONTEMURO, TAMILIA and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This action was instituted by the Plaintiff–Appellee, the American Association of Meat Processors, against the Defendant–Appellant, Casualty Reciprocal Exchange, seeking the payment of a minimum of ten percent of the yearly premiums paid by participants in a program of workers' compensation insurance issued by the Appellant insurer, pursuant to the sponsorship of the Appellee Association. The Association claimed it was entitled to such a recovery based upon an alleged agreement between the parties. The insurer maintained that there was no agreement requiring it to make such a payment to the Association. The dispute involved a period described by the parties and the trial court as the April 1, 1983—March 31, 1984 insurance year.

The dispute proceeded to a non-jury trial. The trial court determined that an oral agreement existed for the Appellant to pay the Association an annual dividend or savings, equal to a minimum of ten percent of the premiums derived by the Appellant from the program. Accordingly, the trial court issued an Opinion and Order, awarding the Association an amount equal to ten percent of the premiums paid by Association members to the insurer, during the period in question, for the workers' compensation coverage endorsed by the Association.

The insurer filed post-trial motions requesting the entry of judgment n.o.v., or alternatively, a new trial. The Association also filed a post-trial motion, urging that it should have been awarded prejudgment interest. The court en banc issued a final Order which denied the motion of the insurer for judgment n.o.v. or a new trial, but granted the request of the Association for interest. After judgment was entered in the trial court, the instant appeal was filed by the Appellant. Three basic claims of error are properly presented for review.

The first contention of the Appellant is that the trial court improperly determined that an agreement existed which required the Appellant to pay the Appellee ten per-

cent of the annual premiums from the policies purchased by members of the Association in the sponsored workers' compensation insurance program. It is claimed that prior annual payments which had been made were merely voluntary, and established no right in the Association to receive a similar payment during the 1983–1984 insurance year, in exchange for the Association's endorsement of the program in issue.

From our review of the entire record, we are convinced that the trial court had substantial evidence to support its determination that an oral agreement existed between the parties which required the insurer to make the payment which was sought in this action by the Association. In determining whether or not an alleged oral agreement existed, a court should look to all of the surrounding circumstances, and the course of dealings between the parties, to ascertain the intent of the parties. *Westinghouse Electric Co. v. Murphy, Inc.*, 425 Pa. 166, 228 A.2d 656 (1967). The evidence of record in this case shows that in March, 1967, the Association was solicited by the insurer to establish a group workers' compensation insurance program for members of the Association. From 1968 through 1984 the Association endorsed the Appellant's workers' compensation program and a number of its members purchased policies for such coverage during each such year. Consistently each year, a payment was made by the insurer to the Association, equal to no less than ten percent of the total premium paid. In addition, evidence was presented of correspondence the insurer sent to the Association, making reference to a "ten percent minimum regardless of loss ratio" and a "practice to pay a minimum of (10%)". During the span from 1968 through 1983, the annual payment or "dividend" to the Association from the insurer varied from a minimum of ten percent of premium dollars, during six or seven of those years, to a high of twenty-three percent in 1973. Each year, a report was sent to the Association by the insurer, together with a check representing the annual payment.

The annual payment sought in this action by the Association was withheld by the insurer after the Association gave notice that it would no longer endorse the Appellant's workers' compensation insurance program. Evidence was presented that prior to that cancellation notice, however, representatives of the insurer gave assurance, both orally and in writing, that whatever the Association did concerning its endorsement, the payment for the April 1, 1983—March 31, 1984 insurance year would be handled the same as in prior years. However, subsequent to the Association's announced cancellation of its endorsement and the beginning of its endorsement of another insurer to provide coverage under the program, the Appellant refused to send its standard yearly report and refused to pay the "dividend" to the Appellee.

It is clear that the trial court did not abuse its discretion or otherwise err in determining that such facts established an oral agreement which required the Appellant insurer to pay the Appellee Association a minimum of ten percent of the premiums paid, under the workers' compensation insurance program, during each year when the program was endorsed by the Association. All of the surrounding circumstances, especially the 15 year course of dealings between the parties, certainly demonstrated a mutual understanding regarding the insurer's obligations to make an annual payment in return for the endorsement of the Association, from which the insurer derived substantial business. The Association provided its endorsement during the 1983–1984 insurance year, and was entitled to the annual payment for that period. Accordingly, we reject the Appellant's initial claim of error.

■ The second argument of the Appellant is that a purported understanding for the payments sought by the Association would be unenforceable, because the payment and acceptance of rebates are illegal under applicable insurance statutes in our Commonwealth. In support of that position, the Appellant cites the Act of May 17, 1921, P.L. 789, art. VI, §§ 635 and 636, 40 P.S. §§ 275 and 276. The

thrust of § 275 is against the placement of insurance at a favorable rate regardless of the mode or manner in which such favored rate is obtained, and in circumstances that are not available to all other insured of the same class. *McDowell v. Good Chevrolet–Cadillac, Inc.*, 397 Pa. 237, 154 A.2d 497 (1959). Section 276 prohibits insured persons or parties or applicants for insurance from receiving any rebates of premiums, or all or any part of the commissions of an agent or broker, or any other favor or advantage, valued consideration or inducement other than such as are specified in the policy.

It is evident that neither of these anti-rebate statutes apply to the type of payment sought by the Appellee in the instant case. The Appellee was not an insurance agent, solicitor, or broker in this arrangement, nor was it an insured, within the meaning of the Pennsylvania insurance laws. It was not a party to the insurance policy or contract which existed in each case between one of its members and the Appellant. Accordingly, the anti-rebate laws cited by the Appellant provide no support for its position that illegality precluded the trial court's enforcement of its agreement to pay the amount in dispute.

■ The Appellant's final argument is that the Appellee was not entitled to an award of prejudgment interest. It contends that because the amount of "dividends" due could not be ascertained by mathematical calculation, an award of such interest was improper. In support of that position, the Appellant cites *Black Gold Coal Corp. v. Shawville Coal Co.*, 730 F.2d 941 (3rd Cir.1984). We cannot agree. The trial court awarded the Appellee the minimum amount to which it was entitled under the agreement which the court found to be in existence between the parties. That amount was ten percent of the annual premiums paid by members of the Association for the workers' compensation insurance coverage sponsored by the Appellee. Such an amount was readily ascertainable. Accordingly, we find no merit in the Appellant's third claim of error.

A section of the Appellant's Brief to our Court is captioned: "The Agreement at Issue is Subject to the Provisions of the Insurance Laws of the Commonwealth". Other than issues which we have already discussed which were preserved in Appellant's written post-trial motions, that part of the Brief also raises questions which were not addressed to the trial court in such post-trial motions. We must deem such contentions to have been waived. *Cucchi v. Rollins Protective Services Company*, 377 Pa.Super. 9, 546 A.2d 1131 (1988).

The Order of the trial court is hereby affirmed.

TAMILIA, J., files a dissenting opinion.

TAMILIA, Judge, dissenting.

I respectfully dissent to the position taken by the majority that there existed an enforceable agreement between American Associates of Meat Processors (Association) and Casualty Reciprocal Exchange (Casualty). The oral agreement between the Association and Casualty was for Association to endorse Casualty resulting in Association members purchasing Casualty insurance in return for which the Association members would receive a return of at least ten percent of the premiums paid each year. While this practice continued for at least 15 years, and was interrupted only during the last year when the Association terminated its relationship with Casualty, I do not believe the Association can enforce the agreement. The agreement only has validity within the context of the insurance law. I believe 40 P.S. § 275, Rebates and inducements prohibited, clearly governs this matter. However the Association viewed the arrangement, Casualty at this time treats it as an agency relationship in which the Association procured the clients with whom Casualty entered into individual contracts. These contracts permitted but did not require Casualty to pay rebates, which was permissible under section 275. *See Girard Trust Bank v. Life Insurance Co. of North America*, 243 Pa.Super. 152, 364 A.2d 495 (1976). When the

money was paid to Association, which could receive it pursuant to assignments to them of individual amounts, they returned most of the premiums, except for a small percentage, to the individual insureds. Independent of the rebates, the Association received sums each year for promotional activity on the part of Casualty. Despite the fact that Casualty refused to pay the rebate the year the Association withdrew its endorsement, which may likely be the reason for non-payment, Casualty alone had the right to determine whether a dividend (rebate) was payable. It is acknowledged that Casualty suffered a loss in its cost-receipt ratio during that year as well as earlier years. Payment during earlier loss years could be justified by desire to retain the large account with hopes that the future would show an improvement. Such a decision could be a rational one whereas payment of a rebate when the account was terminated in the face of a loss in cost-premium ratio would not. Since the decision by Casualty was one it alone had the option to make in terms of its dividend policy, compelling it to make such rebate when it could not be justified on a business basis, clearly would bring them into violation of section 275.

While appellee maintains the illegality of the agreement was not alleged in the complaint, as appellant has stated in its brief and as concurred in by the en banc Court, the defense of illegality of an agreement may be raised at any time and is never waived. *Shafer v. A.I.T.S., Inc.,* 285 Pa.Super. 490, 428 A.2d 152 (1981).

Since the rebates in this instance, to be in compliance with the law, were payable only to the policy holders, and whether or not they would be made in any given year was a determination which could only be made by Casualty, despite any understanding with Association, there was no enforceable agreement with Casualty to compel payment in this instance. I would vacate the Order of the trial court and grant judgment n.o.v.