# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward Appel,
          Petitioner

v.

GWC Warranty Corporation
(Workers' Compensation
Appeal Board),
          Respondent

:
:
:
:
:
:
:
:
:
:
:
:

No. 824 C.D. 2021
Argued: September 14, 2022

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE STACY WALLACE, Judge

OPINION BY
JUDGE COVEY                             FILED:  March 17, 2023

Edward Appel (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) June 23, 2021 order affirming the WC Judge's (WCJ) decision that partially denied Claimant's Petition to Review Medical Treatment and/or Billing (Review Medical Petition). The sole issue before this Court is whether the Board erred by concluding that "[b]ased on the plain language of the Medical Marijuana Act [(MMA)[1]], . . . an insurer or employer cannot be required to pay for medical marijuana."[2] Reproduced Record (R.R.) at 23a.

---

[1] Act of April 17, 2016, P.L. 84, *as amended*, 35 P.S. §§ 10231.101-10231.2110.

[2] Claimant sets forth two issues in his Statement of Questions Involved: (1) whether the Board erred by failing to address whether the WCJ applied the incorrect burden of proof when rendering a decision on Claimant's Review Medical Petition; and (2) whether the Board erred by

**Facts**

On March 1, 2006, Claimant sustained a work-related herniated disc at L5-S1, cervical sprain, disc herniation at L4-L5, lumbar radiculopathy, cervical strain with cervical myofascial spasm, major depression, and aggravation of cervical degenerative spondylosis of degenerative disc disease. Employer accepted Claimant's injury via a Stipulation of Facts approved in a July 9, 2015 WCJ Decision.

Claimant received extensive treatment for his work injury, including two lower back surgeries. *See* R.R. at 10a; WCJ Dec. at 5 (Finding of Fact (FOF) No. 6). Claimant continues to experience chronic low back pain and symptoms in his legs for which his doctor prescribed opioids. *See id.* Claimant gradually weaned himself off of all the opioid medications by September 2018, but experienced a tremendous amount of withdrawal symptoms during the stepdown process. *See id.* (FOF No. 7).

In approximately April 2018, Claimant received his medical marijuana card and used medical marijuana while he was weaning himself off of the opioids. *See id.* (FOF No. 8). Claimant testified that the medical marijuana was more effective for him than any medication he had ever taken, because the opioids became less and less effective over time in addressing his chronic back and leg pain. *See id.*

On October 11, 2018, Claimant filed the Review Medical Petition seeking a determination that his use of medical marijuana was causally related to his work injury and an order directing Employer to reimburse him for the cost thereof. On July 30, 2020, the WCJ partially denied the Review Medical Petition. The WCJ concluded that Claimant met his burden of proving that his use of medical marijuana

---

finding that Claimant failed to meet his burden of proving that Employer is obligated to reimburse Claimant for his out-of-pocket medical marijuana expenses. Claimant Br. at 4. Because Claimant's burden of proof is irrelevant to the underlying dispositive issue, this Court has rephrased the issue for ease of discussion.

was related to the accepted work injury. However, the WCJ concluded that Claimant failed to prove that Employer must reimburse him for his out-of-pocket medical marijuana expenses pursuant to Section 2102 of the MMA,[3] which does not require an insurer or health plan to provide coverage for medical marijuana. Claimant appealed to the Board, which affirmed the WCJ's decision. Claimant appealed to this Court.[4]

**Relevant Law**

Initially,

> [i]n conducting [this Court's] review, we are cognizant of the fact that, "**the Pennsylvania [WC] Act**[5] **is remedial in nature and intended to benefit the worker**, and, therefore, **the [WC] Act must be liberally construed to effectuate its humanitarian objectives**." *Peterson v. Workmen's Comp*[.] *Appeal Bd. (PRN Nursing Agency)*, . . . 597 A.2d 1116, 1120 ([Pa.] 1991) (collecting cases). Accordingly, "'[b]orderline interpretations of [the] [WC] Act are to be construed in [the] injured party's favor.'" *Hannaberry* [*HVAC v. Workers' Comp. Appeal Bd. (Snyder, Jr.)*], 834 A.2d [524,] 528 [(Pa. 2003)] [(]quoting *Harper & Collins v. Workmen's Comp*[.] *Appeal Bd. (Brown)*, . . . 672 A.2d 1319, 1321 ([Pa.] 1996) (citation omitted)[)].

*Reifsnyder v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 883 A.2d 537, 541-42 (Pa. 2005) (emphasis added). This Court has explained:

> "It is accepted that, pursuant to [Section 301(c) of] the [WC] [Act], an employer is only liable to pay for a

---

[3] 35 P.S. § 10231.2102.

[4] "Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated." *DiLaqua v. City of Phila. Fire Dep't (Workers' Comp. Appeal Bd.)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2020) (quoting *Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 595 n.6 (Pa. Cmwlth. 2019)).

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

3

claimant's medical expenses that arise from and are caused by a work-related injury. 77 P.S. § 411(1)[.]" *Kurtz v. Workers' Comp. Appeal Bd. (Waynesburg Coll.)*, 794 A.2d 443, 447 (Pa. Cmwlth. 2002) (footnote omitted). Although the burden is initially on the claimant to establish that the injury is work-related, once the employer acknowledges liability for the injury, "the claimant is not required to continually establish that medical treatment of that compensable injury is causally related because the injury for which the claimant is treating has already been established." *Id*. Accordingly, thereafter, **the employer has the burden of proving that a medical expense is unreasonable**, **unnecessary**, **or is not related to the accepted work injury**.

*Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1200 (Pa. Cmwlth. 2018) (emphasis added).

Section 841(a) of the federal Controlled Substances Act (Federal Drug Act)[6] provides, in relevant part, that "it shall be unlawful for any person knowingly or intentionally -- [] to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" 21 U.S.C. § 841(a).[7] However, Section 903 of the Federal Drug Act expressly provides:

> **No provision** of this subchapter **shall be construed as indicating an intent** on the part of the Congress **to occupy the field in which that provision operates**, **including criminal penalties**, to the exclusion of any [s]tate law on the same subject matter which would otherwise be within the authority of the [s]tate, unless there is a positive conflict between that provision of this subchapter and that [s]tate law so that the two cannot consistently stand together.

21 U.S.C. § 903 (emphasis added).

---

[6] 21 U.S.C. §§ 801-971.                    .

[7] "Mari[j]uana" is classified as a "Schedule I" controlled substance.  21 U.S.C. § 812(c)(c)(10).

4

Section 102 of the MMA provides:

**The General Assembly finds and declares** as follows:

(1) **Scientific evidence suggests that medical marijuana** is one potential therapy that **may mitigate suffering** in some patients **and** also **enhance quality of life**.

(2) The Commonwealth is committed to patient safety. Carefully regulating the program which allows access to medical marijuana will enhance patient safety while research into its effectiveness continues.

(3) **It is the intent of the General Assembly to**:

> (i) *Provide a program of access to medical marijuana* **which balances the need of patients to have access to the latest treatments with the need to promote patient safety**.

> (ii) **Provide a safe and effective method of delivery of medical marijuana to patients**.

> (iii) Promote high quality research into the effectiveness and utility of medical marijuana.

(4) It is the further intention of the General Assembly that any Commonwealth-based program to provide access to medical marijuana serve as a temporary measure, pending [f]ederal approval of and access to medical marijuana through traditional medical and pharmaceutical avenues.

35 P.S. §10231.102 (bold and italic emphasis added).

> Under the [MMA], "[**n**]**ot**[]**withstanding any provision of law to the contrary**, **use or possession of medical marijuana as set forth in** [**the**] [**MMA**] **is lawful within this Commonwealth**." [Section 303(a) of the MMA, 35 P.S.] § 10231.303(a). Relevantly, medical marijuana may only be dispensed, however, to patients who receive certifications from qualified physicians and possess a valid identification card issued by the Pennsylvania Department of Health. *See* [Section 303(b)(1)(i) of the MMA, 35 P.S.] § 10231.303(b)(1)(i). **A "patient" is a Pennsylvania resident who has an enumerated serious medical condition and has met specified requirements for**

5

**certification**.  [Section 103 of the MMA, 35 P.S.] § 10231.103.  Notably, there are many other regulatory requirements and restrictions imposed throughout the [MMA].

**And of particular relevance here**, **the MMA contains an immunity provision protecting patients from government sanctions**.  *See* [Section 2103(a) of the MMA,] 35 P.S. § 10231.2103(a).  Per the statute, **no such individual** "**shall be subject to arrest**, **prosecution or penalty in any manner**, *or denied any right or privilege*, . . . *solely for lawful use of medical marijuana* . . . or for any other action taken in accordance with [the MMA]." *Id*.

*Gass v. 52nd Jud. Dist.*, *Lebanon Cnty.*, 232 A.3d 706, 708 (Pa. 2020) (bold and italic emphasis added).

Moreover, in the relevant rider to the federal Consolidated Appropriations Act (CAA), Congress prohibited the federal Department of Justice (DOJ) from using allocated funds to prevent states, including Pennsylvania, from implementing their medical marijuana laws.  *See* CCA, 2021, Pub. L. No. 116-260, § 531, 134 Stat. 1182, 1282-83 (2020).[8]  Specifically, Section 531 of the CAA provides, in relevant part:

> **None of the funds made available under** [**the CAA**] **to the** [**DOJ**] **may be used**, **with respect to** any of the [s]tates of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan,

---

[8] Similar language has been included in appropriations riders dating back to the 2015 federal budget, although the list of states and territories with medical marijuana legislation has been expanded over the years to reflect new enactments.  *See* CAA, 2020, Pub. L. No. 116-93, § 531, 133 Stat. 2317, 2431 (2019); CAA, 2019, Pub. L. No. 116-6, § 537, 133 Stat. 13, 138 (2019); CAA, 2018, Pub. L. No. 115-141, § 538, 132 Stat. 348, 444-45 (2018); CAA, 2017, Pub. L. No. 115-31, § 537, 131 Stat. 135, 228 (2017); CCA, 2016, Pub. L. No. 114-113, § 542, 129 Stat. 2242, 2332-33 (2015); Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217 (2014). Congress approved the appropriations rider every year thereafter.

6

Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, **Pennsylvania**, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming, or with respect to the District of Columbia, the Commonwealth of the Northern Mariana Islands, the United States Virgin Islands, Guam, or Puerto Rico, **to prevent** any of **them from implementing their own laws that authorize the use**, **distribution**, **possession**, **or cultivation of medical marijuana**.

*Id*. (emphasis added).

Taking into consideration the above-cited law, the Court will now address the issues Claimant has presented in this appeal.

**Discussion**

Claimant first argues that the Board erred by failing to address whether the wrong burden of proof was applied in the underlying litigation before the WCJ. Specifically, Claimant contends that since the WCJ determined that Claimant's medical marijuana use is causally related to his work-related injuries, it was Employer's burden to prove that the medical marijuana is an unreasonable and unnecessary treatment for the work-related injuries. Employer rejoins that whether the burden of proof is on Claimant or Employer is irrelevant because the issue on appeal is whether Employer can be compelled to pay for Claimant's lawful use of medical marijuana.

Initially, Claimant is correct that "[E]mployer has the burden of proving that a medical expense is unreasonable, unnecessary, or is not related to the accepted work injury." *Rogele, Inc.*, 198 A.3d at 1200. However, notwithstanding that the WCJ concluded that Claimant's lawful medical marijuana use was causally related to Claimant's work injury, the WCJ further concluded that an insurer or employer

7

cannot be required to pay for medical marijuana. Thus, the issue before this Court is whether the WCJ properly concluded that Employer is precluded from reimbursing Claimant for his medical marijuana out-of-pocket costs. Employer maintains that Employer cannot be compelled to pay for Claimant's lawful medical marijuana use pursuant to Section 2102 of the MMA.

> At the outset,
>
> > [w]hen terms are not defined, we turn to the rules of statutory construction, which are applicable to statutes and ordinances alike, for guidance. *Kohl v. New Sewickley [Twp.] Zoning Hearing [Bd.]*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015). "The interpretation of a statute or ordinance presents this Court with a pure question of law, which is generally subject to plenary review." *Id.*
> >
> > The primary objective of statutory interpretation is to determine the intent of the enacting legislation. Section 1921 of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. § 1921. A statute's plain language generally provides the best indication of legislative intent, and, therefore, statutory construction. *Uniontown Newspapers, Inc. v. [Pa.] Dept['t] of Corr*[.], . . . 243 A.3d 19, 32 ([Pa.] 2020). "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage." Section 1903 of the Statutory Construction Act, 1 Pa. C.S. § 1903. "Also, where a court needs to define an undefined term, it may consult dictionary definitions for guidance." *THW [Grp.], LLC v. Zoning [Bd.] of Adjustment*, 86 A.3d 330, 336 (Pa. Cmwlth. 2014).

*Sheppleman v. City of Chester Aggregated Pension Fund*, 271 A.3d 938, 949 (Pa. Cmwlth. 2021).

Section 2102 of the MMA provides: "Nothing in [the MMA] shall be construed to **require an insurer** or a health plan, whether paid for by Commonwealth funds or private funds, **to provide coverage** for medical marijuana." 35 P.S. § 10231.2102 (emphasis added). While a plain reading of the

8

statute does not **require** an insurer to provide coverage, it does not **prohibit** an insurer from covering it either. Specifically, Section 2102 of the MMA does not prohibit an insurer or health plan from reimbursing payment for medical marijuana. Further, "there is no statutory language which prohibits insurers from reimbursing claimants who lawfully use medical marijuana to treat an accepted work injury when such treatment is medically reasonable and necessary." *Fegley, as Excutrix of the Est. of Sheetz v. Firestone Tire & Rubber (Workers' Comp. Appeal Bd.)*, ___ A.3d ___ (Pa. Cmwlth. No. 680 C.D. 2021, filed Mar. 17, 2023), slip op. at 17. "This Court has consistently held that courts may not supply words omitted by the legislature as a means of interpreting a statute. This Court's duty to interpret statutes does not include the right to add words or provisions that the legislature has left out." *McCloskey v. Pa. Pub. Util. Comm'n*, 219 A.3d 692, 702 n.9 (Pa. Cmwlth. 2019) (quoting *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Mattson)*, 969 A.2d 634, 637 (Pa. Cmwlth. 2009) (citations omitted)).

> In *Fegley*, this Court explained:
>
> Section 2103 of the MMA, entitled Protections for Patients and Caregivers, provides in subsection (a) that no individual "**shall be** . . . ***denied any right or privilege*** . . . solely for lawful use of medical marijuana." 35 P.S. § 10231.2103(a) (bold and italic emphasis added). Section 301(a) of the WC Act mandates: "Every employer shall be liable for compensation for personal injury to, . . . each employe, by an injury in the course of his employment, **and such compensation shall be paid in all cases by the employer**," 77 P.S. § 431 (emphasis added), and Section 306(f.1)(1)(i) of the WC Act requires: "The employer **shall provide payment** in accordance with this section **for reasonable** surgical and medical services, . . . **medicines** and supplies, **as and when needed**." 77 P.S. § 531(1)(i) (emphasis added). The MMA specifically mandates that no medical marijuana patients be denied any rights for lawful use of medical marijuana and the WC Act provides employees a statutory right to WC medical expenses that are reasonable and necessary to treat a work injury;

9

therefore, if this Court was to agree with Employer, it would be removing those express protections from the MMA and the WC Act.

The Pennsylvania Supreme Court has instructed that "[w]e presume that when enacting legislation, the General Assembly is aware of the existing law." *In Re Est. of Easterday*, 209 A.3d 331, 341-42 (Pa. 2019). Thus, herein we presume, as we must, that the General Assembly was aware of the WC Act's mandate that employers pay for employees' reasonable and necessary medical treatment of work injuries when it authorized medical marijuana as a medical treatment. *See Easterday*. The MMA in no manner alters these preexisting employment rights and obligations. In fact, in the MMA's policy declaration, the General Assembly expressly declared: "Scientific evidence suggests that **medical marijuana** is one potential therapy that **may mitigate suffering** in some patients **and** also **enhance quality of life**." 35 P.S. § 10231.102 (emphasis added). Further, the MMA defines a *serious medical condition* as including "[s]evere chronic or intractable pain of neuropathic origin or severe chronic or intractable pain." [Section 103(16) of the MMA,] 35 P.S. § 10231.103(16). *Intractable pain* is defined as "[c]hronic pain which is difficult or impossible to manage with standard interventions." Medical Dictionary, 2009 [https://medical-dictionary.thefreedictionary.com/intractable+pain (last visited Jan. 30, 2023)]; *see also* McGraw-Hill Concise Dictionary of Modern Medicine, 2002 [https://medical-dictionary.thefreedictionary.com/intractable+pain (last visited Jan. 30, 2023)] ("[P]ain that does not respond to appropriate doses of opioid analgesics."). Thus, the General Assembly explicitly intended Commonwealth residents suffering from intractable pain to have the benefit of this therapy, and at the same time chose not to limit claimants from receiving their statutory rights.

*Fegley*, slip op. at 14-16 (footnotes omitted).

The *Fegley* Court expounded:

"Moreover, we presume the General Assembly did not intend a result that is 'absurd, unreasonable, or impossible to execute.'" *MERSCORP, Inc. v. Del. Cnty.*, 207 A.3d

10

855, 861 (Pa. 2019) (quoting *In re Concord Twp. Voters*, 119 A.3d 335, 341-42 (Pa. 2015)). Given the General Assembly's clear declaration and intention in enacting the MMA, and the MMA's unambiguous statutory language, it is free from doubt that the medical marijuana system the General Assembly created for the well-being and safety of patients, including claimants, was intended for them to have access to the latest medical treatments. Any other interpretation would lead to an unintended, absurd result.[FN]16 *See MERSCORP*.

> [FN]16 Accepting [the e]mployer's argument presumes the General Assembly intentionally carved out a special class of employees who are prescribed medical marijuana for their work-related injuries, but unlike other injured employees are not paid for treatment of their work-related injuries.

*Fegley*, slip op. at 16-17. Accordingly, because Section 2102 of the MMA does not **prohibit** insurers from covering medical marijuana, the WC Act mandates employers to reimburse claimants for out-of-pocket costs of medical treatment which has been found to be reasonable and necessary for their work-related injury, and the WCJ concluded that the medical marijuana use was causally related to the work injury, Employer is required to reimburse Claimant for his out-of-pocket costs under the WC Act.[9]

Employer further claims that Employer cannot be compelled to pay for Claimant's medical marijuana use under Section 2103(b)(3) of the MMA, which provides: "Nothing in [the MMA] shall require an employer to commit any act that

---

[9] The Dissent submits that because the MMA was enacted after the WC Act, and marijuana was illegal under state law at the time the WC Act was enacted, the WC Act does not require employers to provide payment to claimants for reasonable and necessary medical treatment under the WC Act if it includes medical marijuana. However, the WC Act requires employers to pay for reasonable and necessary medical treatment for a work-related injury. The MMA provides that marijuana is an acceptable medical treatment in Pennsylvania. Therefore, the WC Act requires employers to pay for medical marijuana when it is determined that the medical marijuana is reasonable and necessary to treat a work-related injury.

would put the employer or any person acting on its behalf in violation of [f]ederal law." 35 P.S. § 10231.2103(b)(3). Specifically, Employer contends that because it is illegal under the Federal Drug Act to prescribe a Schedule I drug, and marijuana is a Schedule I drug, employers cannot be compelled to pay for such use. However, since Employer is not prescribing marijuana, but rather reimbursing Claimant for his lawful use thereof, Employer is not in violation of the Federal Drug Act. *See also Fegley*, slip op. at 18-19 ("Because reimbursing [a c]laimant for his out-of-pocket expenses for his lawful use of medical marijuana would not require [an e]mployer's WC carrier 'to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance,' 21 U.S.C. § 841(a), [the e]mployer's WC carrier would not violate the Federal Drug Act, or be at risk of facing federal prosecution by doing so."). Accordingly, because Employer would not be in violation of the Federal Drug Act by reimbursing Claimant for his lawful medical marijuana use, and the WCJ concluded that the medical marijuana use was causally related to the work injury, Employer is required to reimburse Claimant for his out-of-pocket costs under the WC Act.[10]

---

[10] The Dissent posits that although the MMA legalizes the use of medical marijuana in Pennsylvania, a provider still cannot legally dispense marijuana under federal law; therefore, because it is illegal, such treatment cannot be reasonable under the WC Act. However, Section 306(f.1)(1)(i) of the WC Act requires: "The employer shall provide payment in accordance with this section for reasonable surgical and medical services, . . . medicines and supplies, as and when needed." 77 P.S. § 531(1)(i). The fact that dispensing marijuana is illegal under federal law does not transform a medically reasonable and necessary treatment under the WC Act for a work injury to a medically unreasonable and unnecessary treatment. Such a determination would eviscerate the entire MMA.

## Conclusion

Because Section 2102 of the MMA does not prohibit insurers from covering medical marijuana, and the WCJ concluded that Claimant's lawful medical marijuana use was causally related to the work injury, the WC Act mandates employers to reimburse claimants for out-of-pocket costs of medical treatment which has been found to be reasonable and necessary for their work-related injuries, Employer is required to reimburse Claimant for his out-of-pocket costs under the WC Act. Further, since Employer is not prescribing marijuana, but rather reimbursing Claimant for his lawful use thereof, Employer is not in violation of the Federal Drug Act.

Given the WC Act's "humanitarian objectives," *Reifsnyder*, 883 A.2d at 542 (quoting *Peterson*, 597 A.2d at 1120), the Federal Drug Act's provision that "it shall be *unlawful* for any person knowingly or intentionally -- [] *to manufacture, distribute*, or *dispense*, or *possess with intent to manufacture, distribute*, or *dispense, a controlled substance*[,]" 21 U.S.C. § 841(a) (emphasis added), the General Assembly's express intent to provide Commonwealth citizens who are patients "*access to medical marijuana*," 35 P.S. §10231.102(3)(i) (emphasis added), "the MMA['s] contain[ment of] an immunity provision protecting patients from government sanctions[,]" *Gass*, 232 A.3d at 708, and that "no [] individual 'shall be . . . denied any right or privilege, . . . solely for lawful use of medical marijuana . . . [,]'" *id*., this Court concludes that the Board erred by concluding an insurer or employer cannot be required to pay for medical marijuana.

For all of the above reasons, the portion of the Board's order that partially denied the Review Medical Petition is reversed.

_____
ANNE E. COVEY, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward Appel,                  :
           Petitioner       :
                              :
          v.                 :
                              :
GWC Warranty Corporation  :
(Workers' Compensation     :
Appeal Board),             :   No. 824 C.D. 2021
           Respondent    :

## O R D E R

AND NOW, this 17th day of March, 2023, the portion of the Workers' Compensation Appeal Board's June 23, 2021 order that partially denied the Petition to Review Medical Treatment and/or Billing is reversed.

_____
ANNE E. COVEY, Judge

Edward Appel, :
          Petitioner :
           :
      v. :
           :
GWC Warranty Corporation (Workers' :
Compensation Appeal Board), : No. 824 C.D. 2021
          Respondent : Argued: September 14, 2022


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE STACY WALLACE, Judge


DISSENTING OPINION
BY JUDGE FIZZANO CANNON        FILED: March 17, 2023


      Like most other states, Pennsylvania has enacted legislation legalizing and regulating the production, sale, and use of medical marijuana. In Pennsylvania, that legislation is the Medical Marijuana Act (MMA).[1] Although its sale remains illegal under federal law and its use has not yet been approved by the United States Food and Drug Administration (FDA), medical marijuana is widely approved in individual states for a variety of medical purposes, including alleviation of chronic pain as an alternative to the use of opioids.

---

[1] Act of April 17, 2017, P.L. 84, *as amended*, 35 P.S. §§ 10231.101-10231.2110.

The interplay of federal and state laws relating to medical marijuana has created a legal morass that cries out for clarification at the federal level. The Massachusetts Supreme Court has observed that

> the current legal landscape of medical marijuana law may, at best, be described as a hazy thicket. Marijuana is illegal at the [f]ederal level and has been deemed under [f]ederal law to have no medicinal purposes, but . . . a majority of . . . [s]tates, have legalized medical marijuana and created regulatory schemes for its administration and usage. Complicating and confusing matters further, Congress has placed budgetary restrictions on the ability of the United States Department of Justice to prosecute individuals for marijuana usage in compliance with a [s]tate medical marijuana scheme, and the Department of Justice has issued, revised, and revoked memoranda explaining its marijuana enforcement practices and priorities, leaving in place no clear guidance.

*Wright's Case*, 156 N.E.3d 161, 165 (Mass. 2020). Nonetheless, state courts, including this Court, must address this interplay when necessary, as here, despite its current unsettled status.

Medical research concerning the efficacy and safety of medical marijuana is evolving, and this writing expresses no opinion concerning those issues. However, in the workers' compensation (WC) context, and under the current state and federal laws, I cannot conclude that the MMA requires a WC insurance carrier to pay a claimant's costs incurred in purchasing medical marijuana. Therefore, for the following reasons, I respectfully disagree with the majority's conclusion that GWC Warranty Corporation or its insurer (Employer) must reimburse Edward Appel (Claimant) for medical marijuana prescribed for pain resulting from a work-related injury.

**I. The MMA Does Not Require an Insurer to Pay for Medical Marijuana**

Under the MMA's declaration of policy, "[t]he General Assembly finds and declares as follows":

> (1) Scientific evidence suggests that medical marijuana is one potential therapy that may mitigate suffering in some patients and also enhance quality of life.
>
> (2) The Commonwealth is committed to patient safety. Carefully regulating the program which allows access to medical marijuana will enhance patient safety while research into its effectiveness continues.
>
> (3) It is the intent of the General Assembly to:
>
>> (i) Provide a program of access to medical marijuana which balances the need of patients to have access to the latest treatments with the need to promote patient safety.
>>
>> (ii) Provide a safe and effective method of delivery of medical marijuana to patients.
>>
>> (iii) Promote high quality research into the effectiveness and utility of medical marijuana.
>
> (4) It is the further intention of the General Assembly that any Commonwealth-based program to provide access to medical marijuana serve as a temporary measure, pending Federal approval of and access to medical marijuana through traditional medical and pharmaceutical avenues.

Section 102 of the MMA, 35 P.S. § 10231.102. Thus, while seeking to advance medical research and enhance quality of life, the MMA also reflects caution in enacting "a temporary measure" regarding access to medical marijuana, as well as in "balanc[ing] the need of patients to have access to the latest treatments with the need to promote patient safety." *Id.*

Section 2102 of the MMA, relating to insurers, provides: "Nothing in this act shall be construed to require an insurer or a health plan, whether paid for by

Commonwealth funds or private funds, to provide coverage for medical marijuana." 35 P.S. § 10231.2102. The WC Appeal Board (Board) correctly concluded in this case that the plain language of Section 2102 does not require coverage for medical marijuana prescribed to a claimant to treat a work injury.

The majority reasons that although the MMA does not itself mandate insurance reimbursement for the costs of medical marijuana, it does not preclude reimbursement that is otherwise required by the WC Act.[2] However, prior to the enactment of the MMA, there was no legal medical marijuana in Pennsylvania, and therefore, no reimbursement was required for it under the WC Act. *Cf. Wright's Case*, 156 N.E.3d at 171 (explaining that before Massachusetts enacted its medical marijuana law, "marijuana was illegal under both Massachusetts and [f]ederal law and was not a reasonable medical expense reimbursable" under a WC statute requiring an employer to pay for a claimant's reasonable and necessary medical expenses). The MMA legalized medical marijuana for the first time and in a limited manner; in doing so, it made clear that it was not to be construed to require insurance coverage of medical marijuana. 35 P.S. § 10231.2102. This makes sense, inasmuch as medical marijuana has not yet been approved by the FDA as safe and effective for use in medical treatment, and its use is not legal under federal law.[3] In any event,

_____

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2701-2710.

[3] In *Wright's Case*, the Massachusetts Supreme Court concluded that a provision in that state's medical marijuana law providing that insurers could not be required to reimburse for the costs of medical marijuana was "controlling and not overridden by the general language in the [WC] laws requiring [WC] insurers to reimburse for reasonable medical expenses." 156 N.E.3d at 165. That court observed:

> It is one thing for a [s]tate statute to authorize those who want to use medical marijuana, or provide a patient with a written certification for medical marijuana, to do so and assume the potential risk of [f]ederal prosecution; it is quite another for it to require unwilling

the legislature, not the courts, must effect any change in the MMA's stated policy and the balance struck regarding insurance coverage. Therefore, I believe this Court is constrained to agree with the Board that the MMA cannot be read to mandate reimbursement for prescribed medical marijuana provided to WC claimants.

## II. Current State of Federal Law on Marijuana

Section 2103 of the MMA specifically provides that nothing in the MMA requires an employer to commit any act that would violate federal law. *See* 35 P.S. § 10231.2103. The majority reasons that reimbursement of medical marijuana costs does not violate federal law, as reimbursing for medical marijuana does not require the carrier to participate in any activity deemed illegal under the federal Controlled Substances Act (CSA).[4]

This Court need not reach this issue because, as discussed above, the MMA expressly does not require insurance reimbursement of medical marijuana costs. In any event, however, I believe the majority's reasoning is in error.

It is true that the Controlled Substances Act does not expressly forbid reimbursement for prescribed medical marijuana. The statute provides, in pertinent part, that " it shall be unlawful for any person knowingly or intentionally — (1) to

---

third parties to pay for such use and risk such prosecution. The drafters of the medical marijuana law recognized and respected this distinction.

*Id.* at 166. *See also id.* at 173 (stating that "[i]t is one thing to voluntarily assume a risk of [f]ederal prosecution; it is another to involuntarily have such a risk imposed upon you"); *Bourgoin v. Twin Rivers Paper Co.*, 187 A.3d 10, 21-22 (Me. 2018) (suggesting that "the magnitude of the *risk* of criminal prosecution is immaterial . . . . Prosecuted or not, the fact remains that [an insurer] would be forced to commit a federal crime if it complied with the [reimbursement] directive of the [WC] [b]oard.").

[4] 21 U.S.C. §§ 801-904.

manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ." 21 U.S.C. § 841(a)(1). Therefore, it appears an insurer reimbursing for medical marijuana costs under state law could be subject to federal prosecution only on a secondary basis as either an aider/abettor or an accessory after the fact, and the feasibility of such prosecution is questionable. *Compare Appeal of Panaggio (N.H. Comp. Appeals Bd.)*, 260 A.3d 825, 835 (N.H. 2021) (holding that a WC insurer, "if ordered to reimburse [a claimant's] purchase of medical marijuana, would not be guilty of aiding and abetting [the claimant's] violation of the CSA because the insurer would not be an active participant with the *mens rea* required"), *with Bourgoin v. Twin Rivers Paper Co.*, 187 A.3d 10, 19 (Me. 2018) (holding that a WC insurer "would be aiding and abetting [the claimant]—in his purchase, possession, and use of marijuana—by acting with knowledge that it was subsidizing [his] purchase of marijuana").

However, the majority's analysis fails to recognize that, unlike the insurer, the provider necessarily distributes or dispenses medical marijuana. Thus, the provider necessarily violates federal criminal law by doing so. *See id.*

Case law is sparse on this issue, but in other contexts, this Court has held that where a provider cannot provide treatment legally, that treatment cannot be deemed reasonable and necessary, and the provider cannot obtain reimbursement under the WC Act. For example, in *Boleratz v. Workers' Compensation Appeal Board (Airgas, Inc.)*, 932 A.2d 1014, 1019 (Pa. Cmwlth. 2007), this Court concluded that a massage therapist could not obtain reimbursement for treatment provided pursuant to a prescription by the claimant's doctor, because the massage therapist was not licensed by the Commonwealth to provide therapeutic massage. Notably, this was true even though the massage therapist was nationally certified and

Pennsylvania at that time had no licensure provision for therapeutic massage. *See also Taylor v. Workers' Comp. Appeal Bd. (Bethlehem Area Sch. Dist.)*, 898 A.2d 51 (Pa. Cmwlth. 2006) (vocational expert's lack of professional licensure by the Commonwealth meant that employer did not have to pay his bills, despite the fact that claimant's physician wrote a prescription for vocational expert services).

Here, by analogy, I believe that, even when medical marijuana is approved by a claimant's treating doctor, it is not subject to reimbursement. As discussed above, although the MMA legalizes the use of medical marijuana in Pennsylvania, a provider still cannot legally dispense medical marijuana under federal law. Therefore, because it is illegal, such treatment cannot be reasonable and necessary under the WC Act; accordingly, the dispenser cannot obtain reimbursement from a WC insurer.[5] *See Boleratz*; *Taylor*.

### III. Conclusion

Based on the foregoing discussion, I do not believe the MMA can be read as requiring a WC insurer to pay the costs of medical marijuana. Although it does not expressly forbid requiring such reimbursement under a separate statute such as the WC Act, the MMA effects no change in the preexisting reimbursement requirements, because it expressly cannot be read to create a reimbursement requirement where, as here, one did not exist before.

Further, although federal law does not directly preclude requiring a WC insurance carrier to pay for prescribed medical marijuana, dispensing medical

---

[5] To the extent that illegality of requiring reimbursement was not asserted by way of a utilization review, I note that a defense of illegality is not waived by delay in asserting it. *See Am. Ass'n of Meat Processors v. Cas. Reciprocal Exch.*, 588 A.2d 491, 495 (Pa. 1991) (finding no waiver where illegality was asserted "under a statute enacted in aid of significant public policies identified by the Pennsylvania legislature").

marijuana remains illegal under federal law.  Because a provider dispensing medical marijuana is violating federal criminal law, such treatment cannot be deemed reasonable and necessary under the WC Act as a matter of law.  Therefore, unless and until Congress amends the CSA to decriminalize medical marijuana at the federal level, I believe this Court is constrained to concluded that a provider may not obtain reimbursement from a WC insurer for medical marijuana dispensed to a workers' compensation claimant.

For these reasons, I respectfully dissent.[6]

_____
CHRISTINE FIZZANO CANNON, Judge

Judge McCullough joins in this Dissenting Opinion.

---

[6] I note that my analysis here is similar to that in my concurring and dissenting opinion in *Fegley v. Firestone Tire & Rubber (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 680 C.D. 2021, filed March 17, 2023).