# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Teresa L. Fegley, as Executrix | : | |
| of the Estate of Paul Sheetz, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Firestone Tire & Rubber (Workers' | : | |
| Compensation Appeal Board), | : | No. 680 C.D. 2021 |
| Respondent | : | Argued: September 14, 2022 |

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE STACY WALLACE, Judge

OPINION BY
JUDGE COVEY                                                  FILED: March 17, 2023

Teresa L. Fegley, as Executrix of the Estate of Paul Sheetz (Claimant),[1] petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) June 17, 2021 order affirming the WC Judge's (WCJ) decision that denied Claimant's Petition for Penalties (Penalty Petition) and granted Firestone Tire & Rubber's (Employer) Petition for Review of Utilization Review (UR) Determination (UR Petition).[2] Claimant presents four issues for this Court's review: (1) whether

---

[1] On June 22, 2021, Paul Sheetz (Sheetz) filed the petition for review. By August 10, 2022 Order, this Court, upon review of a Notice of Death and Substitution of Successor, Teresa L. Fegley, Executrix of the Estate of Paul Sheetz (Fegley), substituted Fegley as petitioner. Thus, this Court will use "Claimant" to refer to Sheetz and Fegley interchangeably, depending on the context.

[2] The UR determination did not involve medical marijuana, and Claimant is not appealing from that portion of the Board's order.

the Board erred by making its determination because Employer did not raise Section 2102 of the Medical Marijuana Act (MMA)[3] as a defense, thereby, waiving the issue on appeal; (2) whether the Board erred by concluding that Section 2102 of the MMA applies to WC carriers and overrides the requirements of the WC Act[4] and the Board's Regulations that mandate insurers pay for/reimburse the cost of medical treatment that is reasonable, necessary, and related to an accepted work injury; (3) whether the Board erred by concluding that Section 2102 of the MMA precludes reimbursement for medical marijuana to a claimant using medical marijuana to treat an accepted work injury when it has been determined that such treatment is related to the work injury and is reasonable and necessary; and (4) whether the Board erred by failing to address and reverse the WCJ's sole basis for denying the Penalty Petition – that reimbursement of Claimant's medical marijuana treatment would cause the WC carrier to violate federal law.[5]

## Facts

On September 19, 1977, Claimant sustained an injury during the course and scope of his employment with Employer. As a result thereof, Claimant received medical treatment beginning in 1977, which included two back surgeries. *See* Reproduced Record (R.R.) at 10a; WCJ Dec. at 3. Due to the severe pain in his back and legs, Claimant's doctor prescribed opiates and narcotics, including, *inter alia*, OxyContin. *See* R.R. at 11a; WCJ Dec. at 4. Decades later, at the recommendation of his doctor, Claimant began taking medical marijuana in January 2019, with the

---

[3] Act of April 17, 2016, P.L. 84, *as amended*, 35 P.S. § 10231.2102 ("Nothing in [the MMA] shall be construed to require an insurer or a health plan, whether paid for by Commonwealth funds or private funds, to provide coverage for medical marijuana.").

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[5] This Court has changed the order of Claimant's issues for ease of discussion.

hope of eliminating the need for the opiates and narcotics he had been taking for approximately 30 years. Medical marijuana afforded Claimant pain relief and reduced his need for the opiates and narcotics. *See id.* Further, the medical marijuana "helped Claimant greatly[,] . . . [en]abl[ing him] to be more social and have more better [sic] thoughts." R.R. at 55a. Relative to treating his pain, the medical marijuana "work[ed] great." *Id.* As a result of taking medical marijuana, Claimant weaned himself off of Diazepam and OxyContin. *See* R.R. at 92a. On September 18, 2019, a UR determination declared that Claimant's medical marijuana use was reasonable and necessary. *See* R.R. at 12a; WCJ Dec. at 5 (Finding of Fact No. 5); R.R. at 130a; UR Determination at 2.

On October 28, 2019, Claimant filed the Penalty Petition, therein alleging that Employer violated the WC Act by failing to pay for his medical marijuana treatment, despite that the UR Determination declared that such treatment was reasonable and necessary. On October 15, 2020, the WCJ denied Claimant's Penalty Petition. The WCJ concluded that Claimant failed to prove that Employer's refusal to pay for the medical marijuana treatment violated the WC Act. Claimant appealed to the Board, which affirmed the WCJ's decision. Claimant appealed to this Court.[6]

## Relevant Law

Initially,

> [i]n conducting [this Court's] review, we are cognizant of the fact that, "**the Pennsylvania [WC] Act is remedial in**

---

[6] "Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed[,] or whether constitutional rights were violated." *DiLaqua v. City of Phila. Fire Dep't (Workers' Comp. Appeal Bd.)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2020) (quoting *Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 595 n.6 (Pa. Cmwlth. 2019)).

3

**nature and intended to benefit the worker**, and, therefore, **the [WC] Act must be liberally construed to effectuate its humanitarian objectives**." *Peterson v. Workmen's Comp[.] Appeal Bd. (PRN Nursing Agency), . . .* 597 A.2d 1116, 1120 ([Pa.] 1991) (collecting cases). Accordingly, "'[b]orderline interpretations of [the] [WC] Act are to be construed in [the] injured party's favor.'" *Hannaberry* [*HVAC v. Workers' Comp. Appeal Bd. (Snyder, Jr.)*], 834 A.2d [524,] 528 [(Pa. 2003)] [(]quoting *Harper & Collins v. Workmen's Comp[.] Appeal Bd. (Brown), . . .* 672 A.2d 1319, 1321 ([Pa.] 1996) (citation omitted)[)].

*Reifsnyder v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 883 A.2d 537, 541-42 (Pa. 2005) (emphasis added).

This Court has explained:

"It is accepted that, pursuant to [Section 301(c) of] the [WC] [Act], an employer is only liable to pay for a claimant's medical expenses that arise from and are caused by a work-related injury. 77 P.S. § 411(1)[.]" *Kurtz v. Workers' Comp. Appeal Bd. (Waynesburg Coll.)*, 794 A.2d 443, 447 (Pa. Cmwlth. 2002) (footnote omitted). Although the burden is initially on the claimant to establish that the injury is work-related, once the employer acknowledges liability for the injury, "the claimant is not required to continually establish that medical treatment of that compensable injury is causally related because the injury for which the claimant is treating has already been established." *Id.* Accordingly, thereafter, **the employer has the burden of proving that a medical expense is unreasonable**, **unnecessary**, **or is not related to the accepted work injury**.

*Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1200 (Pa. Cmwlth. 2018) (emphasis added).

Section 841(a) of the federal Controlled Substances Act (Federal Drug Act)[7] provides, in relevant part, that "it shall be *unlawful* for any person knowingly

---

[7] 21 U.S.C. §§ 801-971.

4

or intentionally -- [] *to manufacture*, *distribute*, or *dispense*, or *possess with intent to manufacture*, *distribute*, or *dispense*, *a controlled substance*[.]" 21 U.S.C. § 841(a) (emphasis added).[8]  However, Section 903 of the Federal Drug Act expressly provides:

> **No provision** of this subchapter **shall be construed as indicating an intent** on the part of the Congress **to occupy the field in which that provision operates**, **including criminal penalties**, to the exclusion of any [s]tate law on the same subject matter which would otherwise be within the authority of the [s]tate, unless there is a positive conflict between that provision of this subchapter and that [s]tate law so that the two cannot consistently stand together.

21 U.S.C. § 903 (emphasis added).

> Section 102 of the MMA provides:
>
> **The General Assembly finds and declares** as follows:
>
> (1) **Scientific evidence suggests that medical marijuana** is one potential therapy that **may mitigate suffering** in some patients **and** also **enhance quality of life**.
>
> (2) The Commonwealth is committed to patient safety. Carefully regulating the program which allows access to medical marijuana will enhance patient safety while research into its effectiveness continues.
>
> (3) **It is the intent of the General Assembly to**:
>
>> (i) *Provide a program of access to medical marijuana* **which balances the need of patients to have access to the latest treatments with the need to promote patient safety**.
>>
>> (ii) **Provide a safe and effective method of delivery of medical marijuana to patients**.
>>
>> (iii) Promote high quality research into the effectiveness and utility of medical marijuana.

---

[8] "Mari[j]uana" is classified as a "Schedule I" controlled substance.  21 U.S.C. § 812(c)(c)(10).

5

(4) It is the further intention of the General Assembly that any Commonwealth-based program to provide access to medical marijuana serve as a temporary measure, pending [f]ederal approval of and access to medical marijuana through traditional medical and pharmaceutical avenues.

35 P.S. § 10231.102 (bold and italic emphasis added).

Under the [MMA], "[**n**]**ot**[]**withstanding any provision of law to the contrary**, **use or possession of medical marijuana as set forth in** [**the**] [**MMA**] **is lawful within this Commonwealth**." [Section 303(a) of the MMA, 35 P.S.] § 10231.303(a). Relevantly, medical marijuana may only be dispensed, however, to patients who receive certifications from qualified physicians and possess a valid identification card issued by the Pennsylvania Department of Health. *See* [Section 303(b)(1)(i) of the MMA, 35 P.S.] § 10231.303(b)(1)(i). **A "patient" is a Pennsylvania resident who has an enumerated serious medical condition and has met specified requirements for certification**. [Section 103 of the MMA, 35 P.S.] § 10231.103. Notably, there are many other regulatory requirements and restrictions imposed throughout the [MMA].

**And of particular relevance here**, **the MMA contains an immunity provision protecting patients from government sanctions**. *See* [Section 2103(a) of the MMA,] 35 P.S. § 10231.2103(a). Per the statute, **no such individual** "**shall be subject to arrest**, **prosecution or penalty in any manner**, **or** *denied any right or privilege*, . . . *solely for lawful use of medical marijuana* . . . or for any other action taken in accordance with [the MMA]." *Id*.

*Gass v. 52nd Jud. Dist.*, *Lebanon Cnty.*, 232 A.3d 706, 708 (Pa. 2020) (italic and bold emphasis added; citation and footnote omitted).

Moreover, in the relevant rider to the federal Consolidated Appropriations Act (CAA), Congress has expressly prohibited the federal Department of Justice (DOJ) from using allocated funds to prevent states, including Pennsylvania, from implementing their medical marijuana laws. *See* CAA, 2021,

6

Pub. L. No. 116-260, § 531, 134 Stat. 1182, 1282-83 (2020).[9] Specifically, Section 531 of the CAA provides, in relevant part:

> **None of the funds made available under** [**the CAA**] **to the** [**DOJ**] **may be used**, **with respect to** any of the [s]tates of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, **Pennsylvania**, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming, or with respect to the District of Columbia, the Commonwealth of the Northern Mariana Islands, the United States Virgin Islands, Guam, or Puerto Rico, **to prevent** any of **them from implementing their own laws that authorize the use**, **distribution**, **possession**, **or cultivation of medical marijuana**.

*Id*. (emphasis added).

Taking into consideration the above-cited law, the Court will now address the issues Claimant has presented in this appeal.

---

[9] Similar language has been included in appropriations riders dating back to the 2015 federal budget, and the list of states and territories with medical marijuana legislation has expanded over the years to reflect new enactments. *See* CAA, 2020, Pub. L. No. 116-93, § 531, 133 Stat. 2317, 2431 (2019); CAA, 2019, Pub. L. No. 116-6, § 537, 133 Stat. 13, 138 (2019); CAA, 2018, Pub. L. No. 115-141, § 538, 132 Stat. 348, 444-45 (2018); CAA, 2017, Pub. L. No. 115-31, § 537, 131 Stat. 135, 228 (2017); CCA, 2016, Pub. L. No. 114-113, § 542, 129 Stat. 2242, 2332-33 (2015); Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217 (2014). Congress has approved the appropriations rider every year thereafter.

## Legal Analysis

## Waiver

Section 2102 of the MMA provides: "Nothing in [the MMA] shall be construed to require an insurer or a health plan, whether paid for by Commonwealth funds or private funds, to provide coverage for medical marijuana." 35 P.S. § 10231.2102. Claimant first argues that because Employer did not raise Section 2102 of the MMA as a defense - under the MMA an insurer is not required to provide coverage for medical marijuana - it was clear error for the Board to raise the issue *sua sponte* and to use it as the sole basis for denying the requested relief. Claimant cites *Dobransky v. Workers' Compensation Appeal Board (Continental Baking Co.)*, 701 A.2d 597 (Pa. Cmwlth. 1997), to support his position.

Employer rejoins that in its brief it filed with the WCJ, Employer argued that the facts of the present case were indistinguishable from the facts in *Heckman v. Workers' Compensation Appeal Board (BBU, Inc.)*, 2020 WL 1817378 (Pa. Work.Comp.App.Bd. No. A19-0491, filed March 3, 2020),[10] and further cited the Board's reasoning therein to support its specific reliance on Sections 2102 and 2103(b)(3) of the MMA.[11] Employer further retorts that there was no development of the argument before the WCJ because application of Sections 2102 and 2103 of the MMA involved a pure question of law, and there was no additional factual evidence necessary to interpret and apply these MMA sections; thus, Claimant was in no manner prejudiced. Finally, Employer proclaims that since the defense of

_____

[10] *Heckman* is a Board decision, wherein the Board held: "Based on the plain language of the [MMA], we conclude that an insurer or employer cannot be required to pay for medical marijuana." 2020 WL 1817378 at *3. Based on its ruling, the Board concluded that the employer's failure to reimburse the claimant's payment for medical marijuana to treat his work-related injury was not a violation of the WC Act, and affirmed the WCJ's denial of the claimant's penalty petition.

[11] 35 P.S. §10231.2103(b)(3) ("Nothing in [the MMA] shall require an employer to commit any act that would put the employer or any person acting on its behalf in violation of [f]ederal law.").

8

Section 2102 of the MMA and its conflict with federal law was discussed on the record at the first WCJ hearing, the MMA provisions were at issue at all times.

The *Dobransky* Court held that the claimant therein waived his geographic unavailability defense because he raised it "for the first time before the Board, and neither raised that issue in his answer to [the e]mployer's petition to suspend[,] nor in the record before the WCJ[.]" *Id*. at 600. In the instant case, Employer averred in its Answer to Claimant's Penalty Petition: "[Employer] is not obligated to pay for medical marijuana under federal preemption grounds." R.R. at 6a. Further, at the December 4, 2019 WCJ hearing, the following exchange occurred:

> [Employer's Counsel]: I do have an objection to that, [y]our Honor. The basis for the objection is with respect to the Penalty Petition. The payment of medical marijuana is not being denied on the basis of reasonableness and necessity, but based on the [f]ederal legal issues, the conflict with the Federal [Drug] Act and [Employer's WC carrier's] position is that it can't voluntarily pay for it or risk potential violation of that.
>
> [WCJ]: Well, the parties are going to have to brief that issue.
>
> I'm receiving Exhibit C-7 [the UR Determination]. It's relevant. [Medical marijuana has] been found to be reasonable and necessary by a doctor appointed by . . . the Department of Labor and Industry Bureau of [WC].

R.R. at 76a. Because Employer cited to and relied upon *Heckman* to support its position that Section 2102 of the MMA did not require it to pay for medical marijuana, as well as raised the federal preemption defense in its Answer and on the record, Employer did not waive Section 2102 of the MMA as a defense.

9

## Section 2102 of the MMA - WC Carriers

Claimant next argues that Section 2102 of the MMA does not apply to WC carriers because under The Insurance Company Law of 1921 (Insurance Law),[12] WC carriers are deemed to be insurers of employers, not of injured workers. Claimant proclaims that Section 651 of the Insurance Law is the only provision to address WC in any detail, and it states that WC insurance policies shall contain the agreement of the carrier to "pay all compensation and provide all medical, surgical and hospital attendance for which the insured employer may become liable . . . ." 40 P.S. § 811. Claimant further asserts that Section 301(a) of the WC Act[13] makes clear that the ultimate responsibility to pay for WC benefits lies with the employer, whether it be through the employer's self-insurance plan or WC insurance. Claimant contends that, ultimately, the reason WC carriers are not insurers under the Insurance Law is because the Pennsylvania WC Fee Schedule governs payment of medical bills in the WC system, not the Insurance Law, and all payment disputes are handled through the WC fee review system.

Employer rejoins that an *insurer* is someone who agrees, by contract, to assume the risk of another's loss and to compensate for that loss. Employer further retorts that the WC Act itself defines a WC carrier as an *insurer*, which is defined as follows:

> [A]n entity subject to the [Insurance Law], including the State Workmen's Insurance Fund, with which an employer has insured liability under th[e WC A]ct pursuant to [S]ection 305 [of the WC Act[14]] or a self-insured employer or fund exempted by the Department of

---

[12] Act of May 17, 1921, P.L. 682, *as amended*, 40 P.S. §§ 341-1007.15.
[13] 77 P.S. § 431 ("**Every employer shall be liable for compensation** for personal injury to . . . each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer . . . **according to the schedule contained in** [S]ections [306] **and** [307] **of** [the WC Act,]" 77 P.S. §§ 511-513, 562.) (emphasis added).
[14] 77 P.S. § 501.

> Labor and Industry pursuant to [S]ection 305 [of the WC Act].

Section 109 of the WC Act, 77 P.S. § 29. Employer declares that the legislature considered WC carriers *insurers* in the WC Act and there is no reason to conclude that in the MMA's context, the General Assembly intended an artificially narrow interpretation of the word.

> At the outset,
>
>> [w]hen terms are not defined, we turn to the rules of statutory construction, which are applicable to statutes and ordinances alike, for guidance. *Kohl v. New Sewickley [Twp.] Zoning Hearing [Bd.]*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015). "The interpretation of a statute or ordinance presents this Court with a pure question of law, which is generally subject to plenary review." *Id.*
>>
>> The primary objective of statutory interpretation is to determine the intent of the enacting legislation. Section 1921 of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. § 1921. A statute's plain language generally provides the best indication of legislative intent, and, therefore, statutory construction. *Uniontown Newspapers, Inc. v. [Pa.] Dep[']t of Corr*[.], . . . 243 A.3d 19, 32 ([Pa.] 2020). "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage." Section 1903 of the Statutory Construction Act, 1 Pa. C.S. § 1903. "Also, where a court needs to define an undefined term, it may consult dictionary definitions for guidance." *THW [Grp.], LLC v. Zoning [Bd.] of Adjustment*, 86 A.3d 330, 336 (Pa. Cmwlth. 2014).

*Sheppleman v. City of Chester Aggregated Pension Fund*, 271 A.3d 938 (Pa. Cmwlth. 2021).

> The MMA does not define the word *insurer*. Black's Law Dictionary defines "insurer" as "[s]omeone who agrees, by contract, to assume the risk of another's loss and to compensate for that loss[,]" and the WC carrier in the instant matter has agreed by contract to assume Employer's risks that arise under the WC

11

Act, and thus meets the definition of insurer. Black's Law Dictionary 962 (11th ed. 2019). Notwithstanding that payment of medical bills in the WC system is governed by the Pennsylvania WC Fee Schedule, *see* 77 P.S. § 431, and all payment disputes are handled through the WC fee review system, WC carriers are regulated by and must adhere to the Insurance Law. *See* 77 P.S. § 29. This Court agrees with Employer that the General Assembly has given no indication that the word *insurer* should be read differently in the context of the MMA. Accordingly, because WC carriers are insurers under the Insurance Law, this Court cannot hold that they are not insurers for purposes of the MMA.

**Section 2102 of the MMA - Coverage**

Claimant next argues that Section 2102 of the MMA only prohibits an insurer or health plan from being compelled "to provide *coverage* for medical marijuana." 35 P.S. § 10231.2102 (emphasis added). Claimant maintains that *coverage* refers to the insurer paying the provider directly for a medical service, while *reimbursement* signifies the insurer paying the patient for the costs of medical treatment already incurred and paid. Employer rejoins that the General Assembly included Sections 2102 and 2103 of the MMA to avoid a possible conflict between the MMA and the Federal Drug Act as it pertains to employers/insurers. Employer asserts that the MMA's plain language exempts employers/insurers from being required to cover medical marijuana.

> It is axiomatic that we may not add statutory language where we find the extant language somehow lacking:
>
> > Under the doctrine of *expressio unius est exclusio alterius*, the inclusion of a specific matter in a statute implies the exclusion of other matters. Similarly, [the Pennsylvania Supreme] Court has long recognized that as a matter of statutory interpretation, <u>although one is admonished to</u>

12

> listen attentively to what a statute says[,] one must
> also listen attentively to what it does not say.
>
> [*Thompson v. Thompson*, 223 A.3d 1272, 1277 (Pa. 2020)
> (cleaned up).] "[T]he court may not supply omissions in
> the statute when it appears that the matter may have been
> intentionally omitted."

*Sivick v. State Ethics Comm'n*, 238 A.3d 1250, 1264 (Pa. 2020) (emphasis added; footnote omitted) (quoting *Commonwealth v. Spotz*, 716 A.2d 580, 590 (Pa. 1998)).

Section 2102 of the MMA, entitled Conflict, provides: "Nothing in [the MMA] shall be construed to require an insurer or a health plan, whether paid for by Commonwealth funds or private funds, to provide **coverage** for medical marijuana." 35 P.S. § 10231.2102 (emphasis added).

> As Justice Felix Frankfurter cogently observed, "legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him." *Addison v. Holly Hill Fruit Prod*[*s.*], 322 U.S. 607, 618 . . . (1944). Here, the terms [coverage] and [reimbursement] are not technical terms which have acquired a peculiar meaning within the context of the [MMA], and, thus, we ascertain their meaning in accordance with their common and approved usage. *Sivick*, 238 A.3d at 1259. As [the Pennsylvania Supreme] Court has explained, in determining such usage, it is proper to consult dictionaries. *Bruno v. Erie Ins*[.] *Co.*, . . . 106 A.3d 48, 75 ([Pa.] 2014).

*Greenwood Gaming & Ent., Inc. v. Commonwealth*, 263 A.3d 611, 620 (Pa. 2021).

"Coverage" is defined as: "Inclusion of a risk under an insurance policy; [t]he risks within an insurance policy." Black's Law Dictionary 451 (11th ed. 2019). However, Black's Law Dictionary defines "[r]eimbursement" as: "1. Repayment. 2. Indemnification." *Id*. at 1539. Here, while the MMA provides that an insurer is not required to include medical marijuana as a risk under its insurance policy, there is no language in the MMA precluding a WC carrier from repaying a

claimant for his out-of-pocket medical treatment cost which has been found to be reasonable and necessary for his work-related injury.[15] Accordingly, because the plain language of Section 2102 of the MMA is limited to not requiring insurers to provide **coverage** for medical marijuana, and the WC Act mandates WC carriers to **reimburse** claimants for out-of-pocket costs of medical treatment, which has been found to be reasonable and necessary for their work-related injury, the MMA does not command otherwise.

Further, Section 2103 of the MMA, entitled Protections for Patients and Caregivers, provides in subsection (a) that no individual "**shall be** . . . *denied any right or privilege* . . . solely for lawful use of medical marijuana." 35 P.S. § 10231.2103(a) (bold and italic emphasis added). Section 301(a) of the WC Act mandates: "Every employer shall be liable for compensation for personal injury to, . . . each employe, by an injury in the course of his employment, **and such**

---

[15] If the General Assembly intended for medical marijuana expenses not to be reimbursable, it would have expressly included the word reimbursement, as other states have explicitly done, but it did not. *See* Fla. Stat. § 381.986(15)(f) ("Marijuana . . . is not reimbursable . . . ."); 410 Ill. Comp. Stat. 130/40(d) ("Nothing in this [a]ct may be construed to require a government medical assistance program, employer, property and casualty insurer, or private health insurer to reimburse a person for costs associated with the medical use of cannabis."); Mich. Comp. Laws § 418.315a ("[A]n employer is not required to reimburse or cause to be reimbursed charges for medical mari[j]uana treatment."); Mont. Code Ann. § 39-71-407(6)(c) ("Nothing in this chapter may be construed to require an insurer to reimburse any person for costs associated with the use of [medical] marijuana . . . ."); Okla. Stat. tit. 63 § 427.8(I) ("Nothing in this act . . . shall . . . [r]equire an employer, a government medical assistance program, private health insurer, [WC] carrier or self-insured employer providing [WC] benefits to reimburse a person for costs associated with the use of medical marijuana[.]"); R.I. Gen. Laws § 21-28.6-7(b)(1) (excepting from the requirement to reimburse medical marijuana costs a "[WC] insurer, workers' compensation group self-insurer, or employer self-insured for workers' compensation"); Utah Code Ann. § 26-61a-112 ("Nothing in this chapter requires an insurer, a third-party administrator, or an employer to pay or reimburse for cannabis, a cannabis product, or a medical cannabis device."). With the exception of Oklahoma and Utah, all of the above statutes were enacted prior to Pennsylvania's MMA.

**compensation shall be paid in all cases by the employer**," 77 P.S. § 431 (emphasis added), and Section 306(f.1)(1)(i) of the WC Act requires: "The employer **shall provide payment** in accordance with this section **for reasonable** surgical and medical services, . . . **medicines** and supplies, **as and when needed**." 77 P.S. § 531(1)(i) (emphasis added). The MMA specifically mandates that no medical marijuana patients be denied any rights for lawful use of medical marijuana and the WC Act provides employees a statutory right to WC medical expenses that are reasonable and necessary to treat a work injury; therefore, if this Court was to agree with Employer, it would be removing those express protections from the MMA and the WC Act.

The Pennsylvania Supreme Court has instructed that "[w]e presume that when enacting legislation, the General Assembly is aware of the existing law." *In Re Est. of Easterday*, 209 A.3d 331, 341-42 (Pa. 2019). Thus, herein we presume, as we must, that the General Assembly was aware of the WC Act's mandate that employers pay for employees' reasonable and necessary medical treatment of work injuries when it authorized medical marijuana as a medical treatment. *See Easterday*. The MMA in no manner alters these preexisting employment rights and obligations. In fact, in the MMA's policy declaration, the General Assembly expressly declared: "Scientific evidence suggests that **medical marijuana** is one potential therapy that **may mitigate suffering** in some patients **and** also **enhance quality of life**." 35 P.S. § 10231.102 (emphasis added). Further, the MMA defines a *serious medical condition* as including "[s]evere chronic or intractable pain of neuropathic origin or severe chronic or intractable pain." 35 P.S. § 10231.103(16). *Intractable pain* is defined as "[c]hronic pain which is difficult or impossible to manage with standard interventions." Medical Dictionary, 2009;[16] *see also*

---

[16] https://medical-dictionary.thefreedictionary.com/intractable+pain (last visited Mar. 16, 2023).

McGraw-Hill Concise Dictionary of Modern Medicine, 2002[17] ("[P]ain that does not respond to appropriate doses of opioid analgesics."). Thus, the General Assembly explicitly intended Commonwealth residents suffering from intractable pain to have the benefit of this therapy, and at the same time chose not to limit claimants from receiving their statutory rights.

"Moreover, we presume the General Assembly did not intend a result that is 'absurd, unreasonable, or impossible to execute.'" *MERSCORP, Inc. v. Del. Cnty.*, 207 A.3d 855, 861 (Pa. 2019) (quoting *In re Concord Twp. Voters*, 119 A.3d 335, 341-42 (Pa. 2015)). Given the General Assembly's clear declaration and intention in enacting the MMA, and the MMA's unambiguous statutory language, it is free from doubt that the medical marijuana system the General Assembly created for the well-being and safety of patients, including claimants, was intended for them to have access to the latest medical treatments. Any other interpretation would lead to an unintended, absurd result.[18] *See MERSCORP*.

Interpreting the MMA as Employer suggests - to prohibit WC carriers from reimbursing claimants who lawfully use medical marijuana to treat their work-related injuries - would also undermine the General Assembly's express intent to provide Commonwealth citizens who are patients "*access to medical marijuana* which balances the need of patients to have access to the latest treatments with the need to promote patient safety[,]" 35 P.S. §10231.102(3)(i) (all emphasis added). Employer's interpretation is clearly contrary to the Statutory Construction Act's declaration that "[t]he object of all interpretation and construction of statutes is to

---

[17] https://medical-dictionary.thefreedictionary.com/intractable+pain (last visited Mar. 16, 2023).

[18] Accepting Employer's argument presumes the General Assembly intentionally carved out a special class of employees who are prescribed medical marijuana for their work-related injuries, but unlike other injured employees are not paid for treatment of their work-related injuries.

16

ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). Accordingly, this Court rules that coverage is different and distinct from reimbursement and while the plain language of Section 2102 of the MMA states that insurers cannot be required to provide *coverage* for medical marijuana, there is no statutory language which prohibits insurers from *reimbursing* claimants who lawfully use medical marijuana to treat an accepted work injury when such treatment is medically reasonable and necessary.[19]

## The Board - Federal Law

Lastly, Claimant argues that the Board erred by failing to address, and reverse, the WCJ's sole basis for denying the Penalty Petition - that reimbursement would cause the WC carrier to violate federal law. Employer rejoins that the WC Act is silent on the issue of an employer/insurer's obligation to pay for medical marijuana or reimburse for its expense. Employer maintains that the issue is one of first impression in Pennsylvania, and beyond the Board's jurisdiction.

The Board opined:

> [D]espite Claimant's medical marijuana being found reasonable and necessary through the UR process, that does not negate the fact [that] Section 2102 of the MMA provides[:] "Nothing in [the MMA] shall be construed to

---

[19] The Dissent submits that coverage and reimbursement are two sides of the same coin and because Section 2102 of the MMA states that nothing in the MMA shall be construed to **require** an insurer or a health plan to provide **coverage** for medical marijuana, the MMA cannot be read to mandate reimbursement for prescribed medical marijuana provided to WC claimants for the medically reasonable and necessary treatment of a work-related injury. However, the MMA does not **prohibit** coverage for medical marijuana, and the WC Act requires employers to pay for the medically reasonable and necessary treatment of a work-related injury. Thus, even if coverage is interpreted to include reimbursement, there is no language in the MMA which **prohibits** insurers from providing coverage for prescribed medical marijuana provided to WC claimants for the treatment of their work-related injury. *See Appel v. GWC Warranty Corp. (Workers' Comp. Appeal Bd.)*, ___ A.3d ___ (Pa. Cmwlth. No. 824 C.D. 2021, filed Mar. 17, 2023).

require an insurer or a health plan, whether paid for by Commonwealth funds or private funds, to provide coverage for medical marijuana." 35 P.S. § 10231.2102. A finding that the medical marijuana is reasonable or necessary, or even causally related to the work injury, does not supersede the plain language of the MMA.[FN]2

> [FN]2 [The Board] note[s] the WCJ reasoned that marijuana is an illegal substance under federal law, and thus, [Employer] was not obligated to commit an illegal federal offense by reimbursing Claimant for the marijuana. However, because Pennsylvania law already precludes insurers from being obligated to pay for medical marijuana, [**the Board**] **need not base** [**its**] **decision on any interpretation of federal law**, **of which** [**it is**] **not in a position to interpret as a Pennsylvania administrative board**.

Board Dec. at 4 (emphasis added). Because the Board was able to resolve the issue based on Pennsylvania law, albeit erroneously, it is of no moment that the Board did not decide the federal law issue.

Notwithstanding, Section 2103 of the MMA mandates: "Nothing in [the MMA] shall require an employer to commit any act that would put the employer or any person acting on its behalf[, i.e., WC carriers,] in violation of [f]ederal law." 35 P.S. §10231.2103. Section 841(a) of the Federal Drug Act provides that "it shall be unlawful for any person knowingly or intentionally -- [] to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" 21 U.S.C. § 841(a). Because reimbursing Claimant for his out-of-pocket expenses for his lawful use of medical marijuana as a reasonable and necessary treatment for his work injury would not require Employer's WC carrier "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," 21 U.S.C. § 841(a), Employer's WC carrier would not violate the Federal Drug Act, or be at risk of facing federal prosecution by doing so. *See also Appel v. GWC Warranty Corp. (Workers' Comp.*

18

*Appeal Bd.)*, ___ A.3d ___, ___ (Pa. Cmwlth. No. 824 C.D. 2021, filed Mar. 17, 2023), slip op. at 11 ("[S]ince [the e]mployer is not prescribing marijuana, but rather reimbursing [the c]laimant for his lawful use thereof, [the e]mployer is not in violation of the Federal Drug Act.").[20]

## **Conclusion**

Employer preserved the defense that Section 2102 of the MMA prevented the Board from compelling Employer to reimburse Claimant for his lawful use of medical marijuana. Further, notwithstanding that Section 2102 of the MMA applies to WC carriers, because the plain language of Section 2102 of the MMA is limited to not requiring insurers to provide *coverage* for medical marijuana, and coverage is different and distinct from reimbursement, there is no statutory language which prohibits insurers from *reimbursing* claimants who lawfully use medical marijuana to treat an accepted work injury when such treatment is medically reasonable and necessary.

Given the WC Act's "humanitarian objectives," *Reifsnyder*, 883 A.2d at 542 (quoting *Peterson*, 597 A.2d at 1120), the Federal Drug Act's provision that "it shall be *unlawful* for any person knowingly or intentionally -- [] *to manufacture, distribute*, or *dispense*, or *possess with intent to manufacture, distribute*, or *dispense, a controlled substance*[,]" 21 U.S.C. § 841(a) (emphasis added), the General Assembly's express intent to provide Commonwealth citizens who are patients

---

[20] The Dissent posits that although the MMA legalizes the use of medical marijuana in Pennsylvania, a provider still cannot legally dispense marijuana under federal law; therefore, because it is illegal, such treatment cannot be reasonable under the WC Act. However, Section 306(f.1)(1)(i) of the WC Act requires: "The employer shall provide payment in accordance with this section for reasonable surgical and medical services, . . . medicines and supplies, as and when needed." 77 P.S. § 531(1)(i). The fact that dispensing marijuana is illegal under federal law does not transform a medically reasonable and necessary treatment under the WC Act for a work injury to a medically unreasonable and unnecessary treatment. Such a determination would eviscerate the entire MMA.

19

"*access to medical marijuana*," 35 P.S. § 10231.102(3)(i) (emphasis added), "the MMA['s] contain[ment of] an immunity provision protecting patients from government sanctions[,]" *Gass*, 232 A.3d at 708, and that "no [] individual 'shall be . . . denied any right or privilege, . . . solely for lawful use of medical marijuana . . . [,]" *id*., this Court concludes that the Board erred, and this Court rules that Employer's failure to reimburse Claimant's out-of-pocket costs for medical marijuana to treat his work-related injury is a violation of the WC Act.

For all of the above reasons, the portion of the Board's order denying Claimant's Penalty Petition is reversed, and the matter is remanded to the Board to remand to the WCJ to determine whether a penalty should be imposed.[21]

_____
ANNE E. COVEY, Judge

---

[21] "[T]he assessment of penalties[] and the amount of penalties imposed are matters within the WCJ's discretion." *Baumann v. Workers' Comp. Appeal Bd. (Kellogg Co.)*, 147 A.3d 1283, 1293 (Pa. Cmwlth. 2016) (emphasis omitted) (quoting *Gumm v. Workers' Comp. Appeal Bd. (Steel)*, 942 A.2d 222, 232 (Pa. Cmwlth. 2008)). However, "the imposition of a penalty is not required even if[, as here,] a violation of the Act is apparent on the record." *Farance v. Workers' Comp. Appeal Bd. (Marino Brothers, Inc.)*, 774 A.2d 785, 789 (Pa. Cmwlth. 2001).

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Teresa L. Fegley, as Executrix      :
of the Estate of Paul Sheetz,          :
                Petitioner      :
                                     :
           v.                    :
                                     :
Firestone Tire & Rubber (Workers'      :
Compensation Appeal Board),        :     No. 680 C.D. 2021
                Respondent      :

## O R D E R

AND NOW, this 17th day of March, 2023, the portion of the Workers' Compensation (WC) Appeal Board's (Board) June 17, 2021 order denying Claimant's Petition for Penalties is REVERSED. The matter is REMANDED to the Board to remand to the WC Judge to determine what, if any, penalty should be imposed.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Teresa L. Fegley, as Executrix                  :
of the Estate of Paul Sheetz,                   :
              Petitioner       :
                               :
          v.                    :
                               :
Firestone Tire & Rubber (Workers'               :
Compensation Appeal Board),                     :   No. 680 C.D. 2021
              Respondent       :   Argued: September 14, 2022


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE STACY WALLACE, Judge


CONCURRING AND DISSENTING OPINION
BY JUDGE FIZZANO CANNON          FILED: March 17, 2023


         Like most other states, Pennsylvania has enacted legislation legalizing and regulating the production, sale, and use of medical marijuana. In Pennsylvania, that legislation is the Medical Marijuana Act (MMA).[1] Although its sale remains illegal under federal law and its use has not yet been approved by the United States Food and Drug Administration (FDA), medical marijuana is widely approved in individual states for a variety of medical purposes, including alleviation of chronic pain as an alternative to the use of opioids.

---

[1] Act of April 17, 2017, P.L. 84, *as amended*, 35 P.S. §§ 10231.101-10231.2110.

The interplay of federal and state laws relating to medical marijuana has created a legal morass that cries out for clarification at the federal level. The Massachusetts Supreme Court has observed that

> the current legal landscape of medical marijuana law may, at best, be described as a hazy thicket. Marijuana is illegal at the [f]ederal level and has been deemed under [f]ederal law to have no medicinal purposes, but . . . a majority of . . . [s]tates, have legalized medical marijuana and created regulatory schemes for its administration and usage. Complicating and confusing matters further, Congress has placed budgetary restrictions on the ability of the United States Department of Justice to prosecute individuals for marijuana usage in compliance with a [s]tate medical marijuana scheme, and the Department of Justice has issued, revised, and revoked memoranda explaining its marijuana enforcement practices and priorities, leaving in place no clear guidance.

*Wright's Case*, 156 N.E.3d 161, 165 (Mass. 2020). Nonetheless, state courts, including this Court, must address this interplay when necessary, as here, despite its current unsettled status.

Medical research concerning the efficacy and safety of medical marijuana is evolving, and this writing expresses no opinion concerning those issues. However, in the workers' compensation (WC) context, and under the current state and federal laws, I cannot conclude that the MMA requires a WC insurance carrier to pay a claimant's costs incurred in purchasing medical marijuana. Therefore, for the following reasons, I respectfully disagree with the majority's conclusion that Firestone Tire & Rubber or its insurer (Employer) must reimburse Teresa L. Fegley, as Executrix of the Estate of Paul Sheetz (Claimant), for medical marijuana prescribed for pain resulting from a work-related injury.

**I. The MMA Does Not Require an Insurer to Pay for Medical Marijuana**

Under the MMA's declaration of policy, "[t]he General Assembly finds and declares as follows":

(1) Scientific evidence suggests that medical marijuana is one potential therapy that may mitigate suffering in some patients and also enhance quality of life.

(2) The Commonwealth is committed to patient safety. Carefully regulating the program which allows access to medical marijuana will enhance patient safety while research into its effectiveness continues.

(3) It is the intent of the General Assembly to:

(i) Provide a program of access to medical marijuana which balances the need of patients to have access to the latest treatments with the need to promote patient safety.

(ii) Provide a safe and effective method of delivery of medical marijuana to patients.

(iii) Promote high quality research into the effectiveness and utility of medical marijuana.

(4) It is the further intention of the General Assembly that any Commonwealth-based program to provide access to medical marijuana serve as a temporary measure, pending Federal approval of and access to medical marijuana through traditional medical and pharmaceutical avenues.

Section 102 of the MMA, 35 P.S. § 10231.102. Thus, while seeking to advance medical research and enhance quality of life, the MMA also reflects caution in enacting "a temporary measure" regarding access to medical marijuana, as well as in "balanc[ing] the need of patients to have access to the latest treatments with the need to promote patient safety." *Id.*

Section 2102 of the MMA, relating to insurers, provides: "Nothing in this act shall be construed to require an insurer or a health plan, whether paid for by

Commonwealth funds or private funds, to provide coverage for medical marijuana." 35 P.S. § 10231.2102. The WC Appeal Board (Board) correctly concluded in this case that the plain language of Section 2102 does not require reimbursement for medical marijuana prescribed to a claimant to treat a work injury.

Section 2102 does not expressly address "reimbursement" of medical marijuana costs, but rather, provides that the MMA cannot be construed to require an insurer[2] to provide "coverage" of such costs. 35 P.S. § 10231.2102. However, "coverage" is not defined in the MMA. Further, the Board did not address whether "coverage" and "reimbursement" are synonymous under the MMA.

In determining the meanings of statutory terms, Section 1903 of the Statutory Construction Act of 1972 (Statutory Construction Act)[3] provides, in pertinent part, that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage . . . ." 1 Pa.C.S. § 1903. In addition, Section 1921 of the Statutory Construction Act provides, in pertinent part:

> (a) Object and scope of construction of statutes. — The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.
>
> (b) Unambiguous words control construction. — When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.
>
> . . . .

---

[2] I agree with the majority that WC insurance carriers are insurers under the MMA. *Accord Wright's Case*, 156 N.E.3d 161, 176 (Mass. 2020) (explaining that "[WC] is a form of insurance").

[3] 1 Pa.C.S. §§ 1501-1991.

1 Pa.C.S. § 1921(a) & (b). With limited exceptions not implicated here, Section 1928 of the Statutory Construction Act provides that "all . . . provisions of a statute shall be liberally construed to effect their objects and to promote justice." 1 Pa.C.S. § 1928.

As the MMA does not define "coverage" and that term does not have a specialized meaning, it should be given its ordinary meaning. The Merriam-Webster.com Dictionary defines "coverage" as, in pertinent part, "inclusion within the scope of an insurance policy or protective plan" or "all the risks covered by the terms of an insurance contract . . . ." https://www.merriam-webster.com/dictionary/coverage (last visited Mar. 16, 2023).

The majority echoes Claimant's argument that "coverage" is not the same as "reimbursement," such that the MMA's statement that it does not require "coverage" for medical marijuana expenses does not preclude requiring Employer to reimburse Claimant for those expenses. I respectfully disagree.

> *Insurance reimbursement is when one is reimbursed in accordance with an insurance policy for expenses that have been incurred and are covered under the policy . . . .* Some types of insurance reimbursement are paid to the insured person under the insurance policy. Other types of reimbursements are paid directly to the provider of a certain good or service after the provider has submitted an assignment of benefits document to the insurance company.
>
> . . . .
>
> Each insurance policy has specific items for which expenses are covered, not covered or covered in part. It is the insured or the assignee's responsibility to provide the insurance company with the appropriate information so that *the insurance company can determine what is or is not covered under the particular policy. The insurance company will provide an explanation of benefits that*

> *documents how reimbursed expenses were calculated.* This explanation of benefits document is the insurance company's response to the insured or its assignee's request for reimbursement.

R. Kimball, "What is Insurance Reimbursement?" (Aug. 6, 2022) (emphasis added).[4] In other words, "coverage" is the extent of the insurer's potential liability under an insurance policy; "reimbursement" is repayment of claims for which there is "coverage" under the policy. *Accord Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 131 A.3d 445, 449 (Pa. 2015) (citing a trial court order "providing that Insurer shall reimburse Insureds if the Insureds establish that the settlement was 'fair and reasonable' unless Insurer establishes that 'there is no coverage' under the policies . . . "). "Coverage" and "reimbursement" are two sides of the same coin: if there is coverage for a claim, the insurer must provide reimbursement. Thus, it makes no sense for Claimant to argue that reimbursement may be required where coverage may not.

Nonetheless, Claimant argues that because the WC Act[5] is to be liberally construed, the MMA should not be interpreted to preclude reimbursement that is otherwise required by the WC Act. The most obvious flaw in this argument is that prior to the enactment of the MMA, there was no legal medical marijuana in Pennsylvania, and therefore, no reimbursement was required for it under the WC Act. *Cf. Wright's Case*, 156 N.E.3d at 171 (explaining that before Massachusetts enacted its medical marijuana law, "marijuana was illegal under both Massachusetts and [f]ederal law and was not a reasonable medical expense reimbursable" under a WC statute requiring an employer to pay for a claimant's reasonable and necessary

---

[4] Available at https://www.smartcapitalmind.com/what-is-insurance-reimbursement.htm (last visited Mar. 16, 2023).

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2701-2710.

medical expenses). The MMA legalized medical marijuana for the first time and in a limited manner; in doing so, it made clear that it was not to be construed to require insurance coverage of medical marijuana. 35 P.S. § 10231.2102. This makes sense, inasmuch as medical marijuana has not yet been approved by the FDA as safe and effective for use in medical treatment, and its use is not legal under federal law.[6] In any event, the legislature, not the courts, must effect any change in the MMA's stated policy and the balance struck regarding insurance coverage. Therefore, I believe this Court is constrained to agree with the Board that the MMA cannot be read to mandate reimbursement for prescribed medical marijuana provided to WC claimants.

---

[6] In *Wright's Case*, the Massachusetts Supreme Court concluded that a provision in that state's medical marijuana law providing that insurers could not be required to reimburse for the costs of medical marijuana was "controlling and not overridden by the general language in the [WC] laws requiring [WC] insurers to reimburse for reasonable medical expenses." 156 N.E.3d at 165. That court observed:

> It is one thing for a [s]tate statute to authorize those who want to use medical marijuana, or provide a patient with a written certification for medical marijuana, to do so and assume the potential risk of [f]ederal prosecution; it is quite another for it to require unwilling third parties to pay for such use and risk such prosecution. The drafters of the medical marijuana law recognized and respected this distinction.

*Id.* at 166. *See also id.* at 173 (stating that "[i]t is one thing to voluntarily assume a risk of [f]ederal prosecution; it is another to involuntarily have such a risk imposed upon you"); *Bourgoin v. Twin Rivers Paper Co.*, 187 A.3d 10, 21-22 (Me. 2018) (suggesting that "the magnitude of the *risk* of criminal prosecution is immaterial . . . . Prosecuted or not, the fact remains that [an insurer] would be forced to commit a federal crime if it complied with the [reimbursement] directive of the [WC] [b]oard.").

## II. Alleged Waiver of Employer's MMA Defense

I concur in the majority's conclusion that Employer did not waive its ability to assert a defense of illegality. In addition, I believe the defense is not subject to waiver as a matter of law.

An employer that unilaterally stops paying a claimant's medical bills is subject to penalties under the WC Act, at the discretion of a WC judge (WCJ), if the WCJ finds that the medical bills are causally related to the employee's work injury. *Delarosa v. Workers' Comp. Appeal Bd. (Masonic Homes)*, 934 A.2d 165 (Pa. Cmwlth. 2007). Section 435(d)(i) of the WC Act provides for the imposition of penalties for a violation of the WC Act or its regulations. Added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 991(d)(i). A claimant who files a penalty petition must first meet his initial burden of proving a violation of the WC Act or the attendant regulations occurred. The burden then shifts to the employer to prove the violation did not occur. *City of Phila. v. Workers' Comp. Appeal Bd. (Andrews)*, 948 A.2d 221 (Pa. Cmwlth. 2008).

Here, the Utilization Review (UR) Determination found that medical marijuana was reasonable and necessary to treat Claimant's pain, and Employer did not appeal that determination. Thus, without more, it might be argued that Claimant met his burden of showing a violation of the WC Act in Employer's refusal to pay for Claimant's medical marijuana.

However, the WCJ found that requiring Employer to pay for Claimant's medical marijuana would improperly force Employer to commit a crime under federal law, which still classes marijuana as an illegal controlled substance. The issue, therefore, is whether Employer could waive its illegality defense, and thereby be forced to engage in criminal activity, because it failed to appeal the UR

Determination. Although Pennsylvania appellate courts have not addressed this issue in the WC context, both this Court and our Supreme Court have found the defense of illegality cannot be deemed waived in other contexts, such as employment and contract actions.

One decision providing a useful analogy is *American Association of Meat Processors v. Casualty Reciprocal Exchange*, 588 A.2d 491 (Pa. 1991). In *Meat Processors*, a WC carrier allegedly entered into an oral agreement with a trade association to provide annual rebates to association members who purchased their WC coverage from the carrier. When the carrier failed to provide rebates for the last year of its contracts with members, the association sued and recovered a judgment for the amount of the rebates it claimed were due. The carrier raised a defense of illegality for the first time in its post-trial motion. Our Supreme Court held that the defense of illegality was not waived, notwithstanding that Pennsylvania Rule of Civil Procedure 1030, New Matter, requires affirmative defenses including illegality to be pleaded in New Matter and that Rule 1032(1) provides that defenses not properly pleaded are waived. *See* Pa.R.Civ.P. 1030 & 1032(1). Our Supreme Court explained that the controlling factor "on the question of waiver, is that the alleged contract is illegal under a statute enacted in aid of significant public policies identified by the Pennsylvania legislature." *Meat Processors*, 588 A.2d at 495. Because enforcing the alleged oral agreement would violate an insurance statute and contravene public policy as expressed by the legislature, the Court concluded the illegality defense was not waived by delay in asserting it. *Id.* at 495-96.

Although the context and procedural posture of *Meat Processors* differed from this matter, the rationale for its non-waiver holding applies equally here. Requiring insurers to provide coverage for the costs of medical marijuana "is

illegal under a statute enacted in aid of significant public policies identified by the Pennsylvania legislature." *See Meat Processors*, 588 A.2d at 495. That is, the MMA, enacted in aid of significant declared public policies, expressly forbids an interpretation that would require an insurer to reimburse for the costs of medical marijuana. Therefore, I do not believe Employer's illegality defense was waived by failure to appeal the UR Determination, and Employer could thereafter refuse to pay illegal costs and assert the illegality as a defense to a WC penalty petition. Accordingly, while I agree with the majority that there was no waiver, I do so based also on this additional ground.

### III. Current State of Federal Law on Marijuana

As the majority correctly observes, Section 2103 of the MMA specifies that nothing in the MMA requires an employer to commit any act that would violate federal law. *See* 35 P.S. § 10231.2103. Claimant argues that the Board erred in not addressing and reversing the WCJ's sole basis for denying the Penalty Petition, that reimbursement would cause the WC carrier to violate federal law. Principally, Claimant asserts that reimbursement of medical marijuana costs does not violate federal law, as reimbursing for medical marijuana does not require the carrier to participate in any activity deemed illegal under the federal Controlled Substances Act (CSA)[7].

This Court need not reach this issue because, as discussed above, the MMA expressly does not require insurance reimbursement of medical marijuana costs. In any event, however, Claimant's argument lacks merit.

---

[7] 21 U.S.C. §§ 801-904.

At first blush, Claimant's argument appears somewhat persuasive. The federal Controlled Substances Act does not expressly forbid reimbursement for prescribed medical marijuana. The statute provides, in pertinent part, that " it shall be unlawful for any person knowingly or intentionally — (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ." 21 U.S.C. § 841(a)(1). Therefore, it appears an insurer reimbursing for medical marijuana costs under state law could be subject to federal prosecution only on a secondary basis as either an aider/abettor or an accessory after the fact, although the feasibility of such prosecution is questionable. *Compare Appeal of Panaggio (N.H. Comp. Appeals Bd.)*, 260 A.3d 825, 835 (N.H. 2021) (holding that a WC insurer, "if ordered to reimburse [a claimant's] purchase of medical marijuana, would not be guilty of aiding and abetting [the claimant's] violation of the CSA because the insurer would not be an active participant with the *mens rea* required"), *with Bourgoin v. Twin Rivers Paper Co.*, 187 A.3d 10, 19 (Me. 2018) (holding that a WC insurer "would be aiding and abetting [the claimant]—in his purchase, possession, and use of marijuana—by acting with knowledge that it was subsidizing [his] purchase of marijuana").

However, both parties' arguments relate solely to the legality of a WC insurer's conduct in reimbursing costs of medical marijuana. Both parties, as well as the Board, ignore the fact that, unlike the insurer, the provider necessarily distributes or dispenses medical marijuana. Thus, the provider necessarily violates federal criminal law by doing so. *See id.*

Case law is sparse on this issue, but in other contexts, this Court has held that where a provider cannot provide treatment legally, that treatment cannot be deemed reasonable and necessary, and the provider cannot obtain reimbursement

under the WC Act. For example, in *Boleratz v. Workers' Compensation Appeal Board (Airgas, Inc.)*, 932 A.2d 1014, 1019 (Pa. Cmwlth. 2007), this Court concluded that a massage therapist could not obtain reimbursement for treatment provided pursuant to a prescription by the claimant's doctor, because the massage therapist was not licensed by the Commonwealth to provide therapeutic massage. Notably, this was true even though the massage therapist was nationally certified and Pennsylvania at that time had no licensure provision for therapeutic massage. *See also Taylor v. Workers' Comp. Appeal Bd. (Bethlehem Area Sch. Dist.)*, 898 A.2d 51 (Pa. Cmwlth. 2006) (vocational expert's lack of professional licensure by the Commonwealth meant that employer did not have to pay his bills, despite the fact that claimant's physician wrote a prescription for vocational expert services).

Here, by analogy, I believe that, even when medical marijuana is approved by a claimant's treating doctor, it is not subject to reimbursement. As discussed above, although the MMA legalizes the use of medical marijuana in Pennsylvania, a provider still cannot legally dispense medical marijuana under federal law. Therefore, because it is illegal, such treatment cannot be reasonable and necessary under the WC Act; accordingly, the dispenser cannot obtain reimbursement from a WC insurer. *See Boleratz*; *Taylor*.

## IV. Conclusion

Based on the foregoing discussion, I do not believe the MMA can be read as requiring a WC insurer to pay the costs of medical marijuana. Although it does not expressly forbid requiring such reimbursement under a separate statute such as the WC Act, the MMA effects no change in the preexisting reimbursement

requirements, because it expressly cannot be read to create a reimbursement requirement where, as here, one did not exist before.

Further, although federal law does not directly preclude requiring a WC insurance carrier to pay for prescribed medical marijuana, dispensing medical marijuana remains illegal under federal law. Because a provider dispensing medical marijuana is violating federal criminal law, such treatment cannot be deemed reasonable and necessary under the WC Act as a matter of law. Therefore, unless and until Congress amends the CSA to decriminalize medical marijuana at the federal level, I believe this Court is constrained to concluded that a provider may not obtain reimbursement from a WC insurer for medical marijuana dispensed to a workers' compensation claimant.

For these reasons, I respectfully dissent in part.[8]


_____
CHRISTINE FIZZANO CANNON, Judge


Judge McCullough joins in this Concurring/Dissenting Opinion.

---

[8] I note that my analysis here is similar to that in my dissenting opinion in *Appel v. GWC Warranty Corporation (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 824 C.D. 2021, filed March 17, 2023).